AO 241   (Rev. 5/85)

### PETITION UNDER 28 USC § 2254 FOR WRIT OF
### HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District: EASTERN DISTRICT OF LOUISIANA | |
|---|---|---|
| Name<br><br>DARREN O'NEAL DYKES | Prisoner No.<br><br>470970 | Case No. 13 - 346<br>SECT. E  MAG. 1 |

| Place of Confinement |
|---|
| LOUISIANA STATE PENITENTIARY, ANGOLA, LOUISIANA |

| Name of Petitioner (include name under which convicted) | | Name of Respondent (authorized person having custody of petitioner) |
|---|---|---|
| DARREN O'NEAL DYKES | V. | N. BURL CAIN, Warden |

The Attorney General of the State of: LOUISIANA

### PETITION

1. Name and location of court which entered the judgment of conviction under attack

   **22nd Judicial District, Parish of St. Tammany, State of Louisiana.**

2. Date of judgment of conviction   **April 15, 2008**

3. Length of sentence   **Life & 15, Concurrent.**

4. Nature of offense involved (all counts)   **Attempted Poss. Of a Firearm & Aggravated Flight from an Officer**

TENDERED FOR FILING

FEB 2 1 2013

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

5. What was your plea? (Check one)

   (a) Not guilty    [X]

   (b) Guilty    [ ]

   (c) Nolo contendere    [ ]

   If you entered a guilty plea to one count or indictment, and not guilty to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)

   (a) Jury    [X]

AO 241   (Rev. 5/85)

   (b) Judge only

7.   Did you testify at trial?

   Yes    No    **X**

8.   Did you appeal from the judgment of conviction?

   Yes  **X**  No

9.   If you did appeal, answer the following:

   (a) Name of court    **First Circuit Court of Appeals**

   (b) Result    **Denied**

   (c) Date of result and citation, if known    **February 10, 2010 in Docket No. 2009-KA-1447**

   (d) Grounds raised    **Two Grounds Raised-See Attached Exhibits**

   (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

      (1) Name of court    **Louisiana Supreme Court**

      (2) Result    **Denied**

      (3) Date of result and citation, if known    **October 8, 2010 in Docket No. 2010-KO-0589**

      (4) Grounds raised    **Same as on Direct Appeal**

   (f)  If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

      (1) Name of court

      (2) Result

      (3) Date of result and citation, if known

      (4) Grounds raised

10.   Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

   Yes  **X**  No

11.   If your answer to 10 was "yes," give the following information:

AO 241   (Rev. 5/85)

(a) (1) Name of court   22nd Judicial District Court

(2) Nature of proceeding   **Application for Post Conviction Relief**

(3) Grounds raised   **Improper Vouching for State Witness, Ineffective Assistance of Counsel, & Confrontation Violation.**

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ____   No   **X**

(5) Result   **Denied**

(6) Date of result   **February 28, 2012**

(b) As to any second petition, application or motion give the same information:

(1) Name of court ____

(2) Name of proceeding ____

(3) Grounds raised ____

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ____   No   **X**

(5) Result ____

(6) Date of result ____

(c) Did you appeal to the highest state court having jurisdiction over the result of action taken on any petition, application or motion?

(1) First petition, etc.   Yes   **X** No ____

(2) Second petition, etc.   Yes ____   No ____

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

AO 241   (Rev. 5/85)

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) trough (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: **Petitioner's Constitutional Right Were Violated When He Was Convicted With Insufficient Evidence**

Supporting FACTS (state *briefly* without citing cases or law):     **See Attached: Memorandum in Support**

B. Ground two: **Petitioner's Constitutional Rights to Confrontation was violated.**

Supporting FACTS (state *briefly* without citing cases or law):     **See Attached: Memorandum in Support**

AO 241   (Rev. 5/85)

_____

_____

_____

_____

C.   Ground three:   **Petitioner's Constitutional Rights Were Violated When The Prosecution Improperly Vouched for State Witness**

Supporting FACTS (state *briefly* without citing cases or law):    **See Attached: Memorandum in Support**

_____

_____

_____

_____

_____

D.   Ground four:   **Petitioner's Constitutional Rights To Have Effective Assistance of Counsel were Violated**

Supporting FACTS (state *briefly* without citing cases or law):    **See Attached: Memorandum in Support**

_____

_____

_____

13.   If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state    **All of these claims were exhausted on State Court Level**

*briefly* what grounds were not so presented, and give your reasons for not presenting them:

**were properly exhausted through the state Court system**

_____

14.   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes _____   No   | X |

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a)  At the preliminary hearing  Stephen A. Yazbeck, 321 North Florida Street, Covington, Louisiana  70433

AO 243   (Rev. 5/85)

(b)  At arraignment and plea    Stephen A. Yazbeck, 321 North Florida Street, Covington, Louisiana  70433

(c)  At trial    Stephen A. Yazbeck, 321 North Florida Street, Covington, Louisiana  70433

(d)  At sentencing    Stephen A. Yazbeck, 321 North Florida Street, Covington, Louisiana  70433

(e)  On appeal    Louisiana Appellate Project

(f)  In any post-conviction proceeding    N/A

(g)  On appeal  from  any  adverse  ruling  in  a  post-conviction    N/A
proceeding

16.    Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes ☐   X No ☐

17.    Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐   No ☐ X

(a)  If so, give name and location of court which imposed sentence to be served in the future: _____

(b)  Give date and length of the above sentence: _____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☐   No ☐ X

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

**None**
_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

2/ 22/2013
_____
Date

*Darrent Dykes*
_____
Signature of Petitioner

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

## DARREN O'NEAL DYKES

### VERSUS No.:_____

## N. BURL CAIN, WARDEN

On Petition For Federal Habeas Corpus Pursuant To 28 U.S.C. § 2254;

From the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana,

Docket Number: 410597 Division "H", Honorable Judge Allison H. Penzato.

Respectfully submitted this 22nd day of February, 2013.

*Darren O'Neal Dykes*
Darren O'Neal Dykes #470970
Camp C  Jaguar Unit
La. State Penitentiary
Angola, La. 70712

## CIVIL PROCEEDINGS

1

# TABLE OF CONTENTS

Procedural History.................................................................2

Statement of the Facts...........................................................4

Federal Questions Presented................................................5,6

Timeliness of Petition............................................................6

Standard of Review................................................................6

Claim #1...................................................................................7

Claim #2.................................................................................10

Claim #3.................................................................................22

Claim #4.................................................................................24

Conclusion and Prayer..........................................................28

Certificate of Service............................................................28

Exhibits............................................................................Attached

i

# TABLE OF AUTHORITIES

## CONSTITUTION

*Article 1 § 16*.................................................................................................12,27

*U.S.C.A. Const. Amend. 6*.............................................................................25

## STATUTES

*28 U.S.C.A. § 2244(d)*..................................................................................7,10

*28 U.S.C.A. § 2254*.....................................................................................2,7,29

*LSA-R.S. 14:95*................................................................................................2

*LSA-R.S. 14:108.1*...........................................................................................2

*LSA-R.S. 14:2(13)*............................................................................................9

*LSA-R.S. 14.95.1*..............................................................................................9

*LSA-R.S. 14.95 (E)*...........................................................................................9

## STATE CASES

*State v. Ball*, 733 So.2d 1 (La.App. 2 Cir. 12/9/98)......................................9,10

*State v. Beauchamp*, 2010-045, 49 So.3d 5 (La.App. 1 Cir. 9/10/10).............24

*State v. Cunningham*, 2004-2200 (La. 6/13/05), 903 So.2d 1110, 1122...........22

*State v. Hampton*, 818 So.2d 720 (La. 3/22/02)..............................................27

## FEDERAL CASES

*Artuz v. Bennett*, 121 S. Ct. 361, 531 U.S. 4 (2000)........................................6

*Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)...........12

*Berger v. United States*, 295 U.S. , at 88-89, 55 S.Ct., at 633.......................25

*California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) .................. 12

*Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ...... 11,12,20,21

*Guidry v. Dretke*, 2005 WL 78304 (U.S. 5th Cir. (Tex.) 1/14/05) ................. 13

*Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 372, 88 L. Ed.2d 203 (1985) ................. 26

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ................. 8

*Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) ................. 13

*Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) ................. 13

*Melendez-Diaz v. Massachusetts*, 557 U.S. At ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) . 20

*Michel v. New York*, 350 U.S. 91, 101,  76 S. Ct. 158, 164, 100 L. Ed. 83 (1955) ................. 26

*Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed 791 (1935) ................. 13

*Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) ................. 12

*Renico v. Lett*, 559 U.S. ---, ---, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) ................. 10

*Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) ................. 28

*Saffle v. Parks*, 494 U.S. At 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) ................. 13

*Strickland v. Washington*, 466 U.S. 689, 104 S. Ct., at 2065 ................. 26

*Teague v. Lane*, 953 F.2d 1532 ................. 28

*United States v. Holmes*, 406 F.3d 377 (5th Cir. 2005) ................. 11

*United States v. Kerr*, 981 F.2d 1050 ................. 23

*Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) ................. 26

*Williams v. Taylor*, 120 S. Ct. 1495, 529 U.S. 362 (2000) ................. 7

*Yarborough v. Alvarado*, 124 S. Ct. 2140, 541 U.S. 652 (2004) ................. 7

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


DARREN O'NEAL DYKES                      CIVIL ACTION

                                         NUMBER:

-Versus-

                                         JUDGE:


N. BURL CAIN, Warden                     MAGISTRATE:


## MEMORANDUM OF LAW IN SUPPORT
## OF PETITION FOR FEDERAL HABEAS CORPUS

**MAY IT PLEASE THE COURT:**

NOW INTO COURT comes , *pro se* Petitioner, who respectfully presents his "Memorandum of Law in Support of Petition for Federal Habeas Corpus"; and who respectfully prays this Honorable Court will accept and consider same in connection with his "Petition for Federal Habeas Corpus", pursuant to *28 U.S.C.A. § 2254.*

### PROCEDURAL HISTORY

On April 25, 2006, the District Attorney for the Parish of St. Tammany filed a Bill of Information against Darren O. Dykes, charging him with being a Convicted Felon in Possession of a Firearm and Aggravated Flight from an Officer – Violations of *LSA-R.S. 14:95* and *14:108.1* respectively. Petitioner entered a not guilty plea to both charged offenses on May 12, 2006. Petitioner was brought to trial on April 15, 2008, and a twelve person jury returned a

2

verdict for the lesser offense of attempted possession of a firearm by a convicted felon, and guilty as charged of aggravated flight from an officer.

The district Court sentenced petitioner to five years for attempted possession of a firearm by a convicted felon and two years for aggravated flight from an officer. The district Court ordered that both sentences were to be served concurrently, with credit for time served. The district Court also indicated that petitioner would serve both sentences without the benefit of probation, parole or suspension of sentence. Finally, the district Court informed petitioner of the two year prescriptive period for filing an application for Post Conviction Relief.

The state then filed a multiple bill of information against petitioner alleging that he was a third felony offender based on his recent conviction. At the hearing, defense counsel entered a stipulation with the state whereby petitioner agreed that he was one and the same person identified in the Multiple Bill of Information. The district Court subsequently accepted petitioner's stipulation and adjudicated him as a third felony offender.

Prior to sentencing, defense counsel argued that imposing a life sentence against petitioner for being a multiple offender was an Eighth Amendment violation because it amounted to cruel and unusual punishment considering that petitioner was only 22 years old at the time of sentencing. The district Court vacated its original sentence for attempted possession of a firearm and imposed a sentence of fifteen (15) years at hard labor without benefit of probation, parole or suspension of sentence.

As to the aggravated flight from an officer, the district court vacated its original sentence and sentenced petitioner to a Life sentence at had labor without benefit of parole, probation or suspension of sentence pursuant to LSA – 15:529.1. both sentences were to be served

3

concurrently and the district Court rejected defense counsel's argument under *State v. Dorothy*. The district Court advised the petitioner of the two year prescriptive period for filing an application for post conviction relief. Defense counsel moved for a reconsideration of sentence, which the district Court denied.

The Louisiana Appellate Project filed petitioner's direct appeal which was denied in the First Circuit Court of Appeals in No. 2009-KA-1447 on February 10, 2010. Petitioner then filed a Writ of Certiorari on March 3, 2010 which was denied on October 8, 2010, in No. 2010-KO-0589.

On September 16, 2011, petitioner filed his application for post conviction relief with the district Court. The district attorney filed an answer on November 23, 2011, and petitioner's traverse was mailed on November 30, 2011. Petitioner was denied by the district Court on February 28, 2012. Petitioner filed a Notice of Intent to Seek Writs and Motion requesting a return date. Petitioner timely filed his Application for Supervisory Writs in the First Circuit Court of Appeal and was denied on June 20, 2012. Petitioner then filed his Supervisory Writ of Review in the Louisiana Supreme Court on July 16, 2012. Petitioner Supervisory Writ of Review was denied on November 21, 2012. Petitioner is now timely filing his Petition for Habeas Corpus Relief on February 22, 2013.

## STATEMENT OF THE FACTS

On March 26, 2006, Deputy Hillary Mayo, with the St. Tammany Parish Sheriff's Office was monitoring one of the highways in St. Tammany Parish when he stopped a white 1990 Lincoln Town Car for allegedly speeding. At the time of trial, Deputy Mayo was not able to testify because he was killed in the line of duty in an unrelated case.

4

In this particular instance, there were three individuals in the vehicle. The driver identified as Petitioner, the front seat passenger was Hamadi Ingram, and Phillip Chatman, the owner of the vehicle and also the back seat passenger. It is undisputed that petitioner was nervous and that there was marijuana in the car at the time. Petitioner was on parole for a prior felony conviction and believed that if the deputy discovered the drugs, he would certainly go to jail.

Although petitioner was only driving this vehicle because he knew the route to Hammond, Louisiana, he decided to leave the scene out of fear of possibly going to jail. The 1990 Lincoln was not capable of traveling at a high rate of speed due to the number of people in the vehicle and the overall weight of the car. Therefore, petitioner was traveling only a short distance before he was overtaken by the pursing officers. At no time during the pursuit did petitioner place himself or other motorists in danger.

Petitioner parked the car less than two miles form where the initial traffice stop took place, and tried to flea from these officers on foot. After falling into a small pond, and climbing over an electric fence, the officers were able to capture petitioner. Before petitioner was brought back to the vehicle, the officers had found two handguns — one under the driver's seat and the other handgun was on the passenger floorboard. Petitioner was then arrested for the above charges. Phillip Chatman testified that both guns were registered to him and that petitioner did not know that the guns were in the car.

## FEDERAL QUESTIONS PRESENTED

1. **Were Petitioner's Constitutional Rights Violated When Petitioner Was Convicted With Insufficient Evidence?**

2. **Were Petitioner's Sixth and Fourteenth Constitutional Rights Violated When He Was Denied His Rights to Confrontation?**

3. Were Petitioner's Constitutional Rights Violated When the State Improperly Vouched for the Credibility of Officer Admires Testimony Denying Petitioner His Rights to Due Process?

4. Were Petitioner's Fifth, Sixth, and Fourteenth Constitutional Rights Violated When He Was Denied Effective Assistance of Counsel?

## TIMELINESS OF THIS PETITION

A 1-year period of limitation shall apply to an petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The limitation period shall run from the latest of (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. *28 U.S.C.A. § 2244(d)(2)*. *Artuz v. Bennett*, 121 S. Ct. 361, 531 U.S. 4 (2000); *Carey v. Saffold*, 122 S. Ct. 2134, 536 U.S. 214 (2002). Petitioner's conviction became final on October 8, 2010. Which makes his conviction finalized on January 8, 2011. Petitioner filed a timely Application for Post Conviction Relief on September 16, 2011. Petitioner exhausted his post conviction claims on November 21, 2012. Petitioner has used 344 days of his 365, therefore, making this petition timely.

## STANDARD OF REVIEW

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

6

federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding. *28 U.S.C.A. § 2254(d)(2)*. *Williams v. Taylor*, 120 S.

Ct. 1495, 529 U.S. 362 (2000); *Yarborough v. Alvarado*, 124 S. Ct. 2140, 541 U.S. 652 (2004).

This petition is based on claims which resulted in decisions that are contrary to clearly

established federal law, and are based on an unreasonable determination of the facts in light of

the evidence presented.

## ARGUMENT OF LAW

**1. PETITIONER'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN HE WAS CONVICTED WITH INSUFFICIENT EVIDENCE.**

In this claim of Insufficiency of Evidence there are two parts:

(A). The Louisiana Code of Criminal Procedure indicates that the State must prove the

following in order to convict a defendant of Aggravated Flight from an Officer:

(1) police officer gives a defendant a visual and audible signal to stop a vehicle; (2) the

defendant's intentional refusal to bring said vehicle to a stop; (3) reasonable grounds for the

officer to believe that a offense has been committed; and (4) a defendant's refusal to bring such

vehicle to a stop has endangered human life.

Petitioner concedes that the State has proven the first three elements of the statute,

however, element four is at issue due to the state's evidence relative to this particular element

was weak and self-serving. While the officers who chased petitioner testified that he drove his

vehicle into on-coming traffic, the defense presented a witness who testified that she saw the

entire incident as it unfolded on Highway 21. Emilda Matthews, the defense witness, testified

7

that she was following petitioner when he was traveling to Hammond, Louisiana. She indicated that one of the deputies indeed pulled petitioner over, but when petitioner tried to flee, he was not speeding and he did not drive his vehicle into on-coming traffic.[1]

When the issue of sufficiency of evidence is raised on a habeas petition, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found t he essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In order for this Court to deny petitioner this constitutional right, the record must reflect that the state satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

In petitioner's case, speed was no more than the posted speed limit[2] because the particular make and model of the vehicle he was driving could not go any faster than 55 to 60 miles per hour in such a short distance. At trial, defense counsel did not dispute the fact that petitioner was scared and ran out of fear of being caught with illegal drugs in the car, but there was no proof that petitioner placed human life in danger when he spent no more than several seconds trying to evade the police in a late model car, containing three passengers.

Accordingly, petitioner contends that his petition for habeas corpus should be granted on the grounds that the state failed to prove that petitioner was traveling at a high rate of speed to avoid the police, and that petitioner drove his vehicle into on-coming traffic before he exited his car to evade arrest.

(B). Possession of a Firearm by a Convicted Felon requires proof of: (1) the possession

---

1   See Trial Record p. 364.
2   See Trial Record p. 358.

8

(actual or constructive) of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the 10-years period of limitation; and (4) general intent to commit the offense.

As this relates to the Attempted Possession of a Firearm by a Convicted Felon charge, the State failed to show that petitioner had any knowledge of the firearms in question or that he had either actual or constructive possession of said firearms during and after the traffic stop. The jury failed to find that petitioner was guilty of the main offense due to the fact that neither of the officers who testified for the State could say with any degree of certainty that the firearms were visible during the initial traffic stop.

Under the Jackson standard, the state has to prove that the petitioner was a convicted felon as defined under *LSA-R.S. 14:2(13)*, and was found in either actual or constructive possession of a firearm at the time of his arrest. *LSA-R.S. 14.95.1*.

While actual possession of a firearm by a convicted felon is not required for purposes of conviction under *LSA-R.S. 14.95 (E)*, the State must show more than the petitioner's mere presence in the area where the firearm was found or mere association with someone who was in possession of a firearm. Therefore, constructive possession occurs when the firearm is subject to a petitioner's dominion and control, even if only temporarily.

In the instant case, the officer's noticed that petitioner was nervousness when he was pulled over. There was no testimony that petitioner had committed any other offense other than speeding. There were two other passengers in the vehicle and the passenger seated in the backseat actually testified that the vehicle and the guns found therein belonged to him.

In *State v. Ball*, 733 So.2d 1 (La.App. 2 Cir. 12/9/98), the defendant was convicted of Possession of a Firearm by a Convicted Felon and sentenced to thirteen (13) years at hard labor.

9

According to the facts in *Ball*, the defendant sole the victim's minivan that contained a rifle and shotgun. When the police spotted the stolen minivan, they gave chase and the defendant lead the police on a high-speed chase through the city. The defendant subsequently ran the vehicle he was driving into a ditch and tried to flee on foot. The officers noticed the guns on the floorboard of the minivan and later charged the defendant with possession after his capture.

Unlike the defendant in *Ball*, petitioner had two other passengers in the vehicle in which he was driving. More importantly, the backseat passenger in the vehicle petitioner was driving was actually the registered owner of both of the firearms and the vehicle as a whole.

While there was testimony that petitioner actually tried to evade the police following the traffic stop, there was no evidence, whatsoever, that petitioner either knew about the handguns in the vehicle or that said weapons were in plain view. Without any evidence to suggest petitioner's knowledge and his constructive possession of the firearms, the district Court erred in accepting the jury's guilty verdict for this offense. The jury already had some reservations[3] about the legitimacy of the state's case against petitioner, but even their verdict of the lesser included offense was not substantiated by the state's weak evidence in this case.

A federal habeas court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court; the federal court instead may do so only if the state court decision was objectively unreasonable. > *28 U.S.C.A. § 2254(d)*. > *Renico v. Lett*, 559 U.S. ---, ---, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010). In this case the appellate courts decision was objectively unreasonable.

Therefore, petitioner has shown that the jury's verdict was in total conflict with clearly

---

3   See trial Record p. 450.

established law.

## 2. PETITIONER RIGHT TO CONFRONTATION WERE VIOLATED WHEN THE EVIDENCE WITNESSED BY AND HEARSAY STATEMENTS OF DEPUTY HILLARY MAYO WAS INTRODUCED AT TRIAL THROUGH OTHER POLICE OFFICERS IN VILATION OF THE SIXTH AND FOURTEENTH AMENDMENT TO THE CONFRONTATION CLAUSE.

Part A:

Petitioner contends that his rights to Confrontation were violated when the evidence witnessed by and hearsay statements of Deputy Hillary Mayo was introduced at trial through other police officers in violation of his Constitution Rights.

It cannot be argued that the statements were not testimonial when the state argued the petitioner's guilt in opening and closing arguments based on officer Mayo's actions using the statements as testimonial evidence in support o the states very weak case.

Petitioner's constitutional rights to confrontation were violated as set forth in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), where the United States Supreme Court established "a categorical rule barring the admission of out-of-court testimonial statements against the accused absent opportunity for cross-examination." *United States v. Holmes*, 406 F.3d 377 (5th Cir. 2005)(discussing *Crawford*).

The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him," noted Justice Antonin Scalia, writing for the Court in *Crawford*. "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty," Justice Scalia added. "This is not what the Sixth Amendment prescribes."

11

In *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Supreme Court defined the relationship of the hearsay rules and the confrontation clause as follows:

> "While it may readily be conceded that hearsay rules and the confrontation clause are generally designed to protect similar values, it is quite a difference to suggest that the overlap is complete and that the confrontation clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they exist historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under arguably recognized hearsay exception. See: *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). the converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied. Given the similarity of the values protested, however, the modification of a state's hearsay rules to create new exceptions for the admission of evidence against a defendant, will often raise questions of compatibility with the defendant's constitutional right to confrontation. Such questions require attention to the reasons for, and the basic scope of, the protections offered by the Confrontation Clause."

*Article 1 § 16* of the Louisiana Constitution of 1974 provides that "an accused is entitled to confront and cross-examine the witnesses against him...." The Fourteenth Amendment makes the federal confrontation clause obligatory on the states. *Pointer, supra.*

Prior to the introduction of the statements complained of herein, defense counsel objected, and still several officers were allowed to testify to the statements made by Deputy Mayo as to the initial stop made by Deputy Mayo. This includes the chase by Deputy Mayo, the sealing of the evidence bags containing the guns by Deputy Mayo, the booking by Officer Mayo. All of this was allowed over defense objections to the questioning, the prosecution elicited this testimony in violation of *Crawford*.

Under *Crawford* the admission of testimonial hearsay violates the Confrontation Clause

12

unless the declarant is shown to be unavailable to testify and the defendant had prior opportunity to cross-examine the declarant.

The Due Process Clause's guarantee of fundamental fairness embodies the elements of primacy and centrality that indicate a "watershed rule of criminal procedure." *Saffle v. Parks*, 494 U.S. At 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). "That requirement [of due process in a criminal trial], in safeguarding the liberty of the citizen against deprivation through the action of the state embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions." *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed 791 (1935).

In *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), the United States Supreme Court revisited confrontation clause concerns:

> "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)." *Id*, 119 S.Ct. At 1894.

The trial judge specifically overruled defense counsel's objections and admitted the hearsay statements, which contaminated the entire trial. The result is the petitioner was deprived his Sixth Amendment right to confrontation guaranteed by the United States Constitution. See: *Guidry v. Dretke*, 2005 WL 78304 (U.S. 5th Cir. (Tex.) 1/14/05).

At the trial, defense counsel objected to the testimony being elicited by the prosecution several times.

Mr Yasbeck: Your honor, the arresting officer in this case has passed away after he made this arrest, and he is not here for us to cross-examine. And for him to mention a report in his

13

opening that he can't use or enter as it would be hearsay is improper.

The Court: Did you say you had a motion in limine?

Mr Yazbeck: I have a motion.

The Court: Why have we not argued that motion in limine? Have you neglected to bring it up? I

didn't know you had a motion in limine.

Mr Yazbeck: I'm bringing it up now. I spoke to Scott (the Assistant District Attorney). He said

he wasn't going to use anything from Officer Mayo, but in his opening, he brings it up.

The Court: you can't certainly argue that. And let's hear – I understand what you are saying.

Let's hear what Mr. Gardner has to say in response to your objection.

Mr Gardner: There's a limited amount of information that, because other people because

involved in the case, based upon the call from Mayo, that I believe it is appropriate for the jury

to hear. I understand Mayo is not here.

The Court: Yes, Not only that, it is very similarly analogous to a detective or police officer

getting a dispatch from the dispatcher. Go to 922 Avenue E. there is a murder involved. The

officer gets on the stand he says, how did you happen to go to Avenue E. Well, I received this

message.

Ginger Berrigan says that is a form of hearsay. It is acceptable because it gives the officer the

reason why he is doing that. For the same argument, I'm going to allude to the report that will

be substantiated by subsequent testimony. Do you understand the ruling of the court?

Mr. Yazbeck: Yes.

The Court: I'm overruling your objection.

14

Mr. Yazbeck: Note my objection as to hearsay for the record, Your Honor.[4]

Later, during officer Admires' testimony the prosecution elicited the following here say testimony:

Q. All right. Turning your attention to March 23rd, on that date, did you hear radio traffic that caused you to believe that Mayo was out with a traffic stop?

A. Yes sir, I did.

Q. How did that come out to you?

Mr Yazbeck: Your honor, I'm going to object. This is the nature of hearsay. He is going to testify as to what Officer Mayo said. Officer Mayo..[5]

After a bench conference was held the court overruled the objection, and questioning of Officer Admire continued, the state elicited the following testimony:

Q. We have certain rules with regard to hearsay. Since Deputy Mayo will not be here to speak, we have to abide by the rules.

A. Okay, upon making the traffic stop, Deputy Mayo called. Advised central of the traffic stop. I was approximately six miles away. Based on where the other units were at the time. I knew I was the closest unit to him. He (Officer Mayo) went over to an auxiliary channel to run the license plate and the driver of the vehicle. When he did that, I switched over to the auxiliary channel on my portable radio and kept my main radio on the main channel. When he ran the driver of the vehicle, he said the only ID that he had on the individual was a business card for a gun dealer. At that point..

By Mr. Yazbeck: Objection. That is evidence. That is not showing his, that is not giving him an

---

4   See Trial Record pgs. 343-44.
5   See Trial record pgs. 353-54.

explanation for his actions. That is evidence that they can't admit.

The Court: I'll sustain the objection.

While the Court sustained the objection the jury heard the prejudicial testimony without an admonishment. Both in opening and closing arguments by the state the jury was told the defendant gave Officer Mayo the card to the gun dealer and Officer Mayo wrote the name given by the driver on the back of the card. The only witness to these alleged facts was Officer Mayo. Here the petitioner was denied his fundamental right to confrontation.

The witness continued in response to prosecution questions to testify for the absent Deputy Mayo. I saw deputy Mayo's overhead emergency equipment on.[6] deputy Mayo was waving me.[7] Officer Mayo pulled up s he was making the turn around the fence.[8]

The state continued to elicit pieces of Officer Mayo's information from Officer Admire in total conflict with the petitioner's Constitutional Right to Confrontation.

Q. Explain to me what happened.

A. I, via the radio, asked for Deputy Mayo's location. He began to give me a brief description of the route he had run chasing the subject. He (deputy Mayo) advised me that the subject had taken his tennis shoes off. They were in a field. That I would be able to see them once I got around the back of the building. But to be careful. There was an electrified fence back there that the subject had gone over. And that it was hot. So he told me to be careful.

Q. All right.

A. [I] asked Deputy mayo again via the radio, what is your location. He said I'm I went through

6  See Trial Record pg. 356 Lns. 5-6.
7  See Trial Record pg. 356 Ln. 10.
8  See Trial Record pg. 359 Ln. 10.

16

a pasture. I'm (Deputy Mayo) looking at a metal building.[9]

A. He advised me, be careful. There's a electrified fence that's hot. When you come this way, I'm (Sgt. Mayo) standing by the shoes. You can set up a scent trail with the dog from these items.

So we proceeded to the location that Deputy Mayo was in the field. The bloodhounds was put on the shoes. And Sergeant Jenkins and Chris Naquin started tracking the individual with Deputy and myself following behind.[10]

The state continually elicited pieces of Officer Mayo's missing testimony from other officers, against the rights of petitioner in order to obtain a conviction in total violation of the United States Constitutional Rights to the Confrontation Clause, which guarantees petitioner the right to face his accuser.

Then the state continued to elicit more information from the testimony of Officer Sid Jenkins with the following testimony:

Q. Could you explain how that call came out to you?

A. Called out to [sic] Deputy Mayo. He worked with canine before. He had a guy that he tried to do a traffic stop. And he (Mayo) had a guy that bailed out of his unit and took off running in the woods. And he asked for, needed a canine to come track.[11]

All of this testimony was hearsay and being allowed erroneously by the trial court, as he continued to testify eliciting Sgt. Mayo's actions.

Q. What happened when you got there?

---

9   See Trial Record pg. 361.
10  See Trial Record pg. 362 Lns. 19-27.
11  See Trial Record pgs. 367-368.

A. When we got in the middle, me and Deputy Naquin, we drove out in the cow pasture. And

Deputy Mayo, advised me that he had black male subject. He tried to do a traffic stop. The guy

bailed out. Took off running. Said the subject fell in to a pond. Deputy Mayo almost caught him

when the guy come out of the pond. He said the guy took off running from him again. He ran in

to actually an electric fence. Grab hold to do it. Got shocked. And the subject left his shoes out

in the middle of the cow pasture.

Q. Did he point those shoes out to you?

A. Yes, sir. He was standing right there by them.

Q. What did you do once you located the shoes that were associated with the guy that you

wanted to pursue?

A. Deputy Mayo, he had worked, like I say, he had worked canine with us in the past. And he

knew that we had a scent article there. He stayed right there. Didn't run any further. Obviously,

Deputy Mayo, he was a big guy. Not a fast runner. He stayed right there with the shoes.

　　　　Once he said, like the guy ran this way. Here are the shoes right here. At that point, I

went got my blood hound out of the truck.[12]

Q. Do you know, who was it that booked him?

A. I wan to say Deputy Mayo did.

Q. Okay, that is, you did not participate in booking him?

A. No, sir.

Q. do you know what date, what name he was booked under initially?

A. I'm not sure what his name was. But once the, they got him to the jail and put him on AFIS

---

12 See Trial Record Pgs. 369-370.

18

machine, I do believe he was, he told them the wrong name. It wasn't his name. It was his, it was a name similar but not his name.

Here it should be noted that this testimony should have never been allowed as the Officer was only attempting to guess what happened as he did not participate in the actual booking.

Officer Hudson went on to testify concerning the identification of the glock nine and repeated at that the identification of Officer Mayo's initials and signature of the evidence bag containing a Ruger P-95 pistol. Identifying evidence and establishing chain of custody for evidence purpose is certainly testimonial. And Officer Hudson standing in for Officer Mayo continually denying petitioner to his right to confrontation.[13]

Defense counsel object to these violations.[14]

By Mr. Yazbeck: Objection. May we approach, your honor.

The Court: Yes.

By Mr. Yazbeck: this was evidence introduced by Deputy Mayo. He is not here to be cross-examined.

By the Court: That objection could have been used on the weapons themselves. But you have not, you would not have won that objection because if a person died who was in the chain of evidence, do you throw up your hands and say, we have to now, we have to clear all the reports that this officer has done? I don't think so. And I believe the testimony has established that that was his initials on there, and that deputy was familiar with his signature. And it [sic] was opened in the presence of this prosecutor.

---

13 See Trial Record Pg. 386.
14 See Trial Record Pg. 388.

19

By Mr Yazbeck: I think—did Mayo find this, too, or Hudson?

By Mr. Gardner: Hudson.

By the Court: So I think that is why I'm overruling you objection.

By Mr. Yazbeck: thank you.

When the key witness to the prosecution dies in an unrelated incident such as the case here with Officer Mayo, the defendants confrontation rights do not simply disappear, and fundamental fair trial principles argue against the state simply invoking the hearsay exceptions to void petitioner's right to the confrontation clause.

Part B: Confrontation and *Melendez-Diaz* Violation.

Most recently in *Melendez-Diaz v. Massachusetts*, 557 U.S. At ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), No. 07-591; Justice Scalia in delivering the opinion of the Court made it clear that the person who conducted the forensic analysis "must testify". Citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The report complained of herein clearly was testimonial as it was used to convince the jury that the defendant was speeding which is an element of the offense.

The record provided to petitioner fails to note whether or not the state provided notice that it intended on using the CAD records at trial. An evidentiary hearing would be necessary to establish the facts and petitioner has reserved his right to raise an ineffective assistance of counsel claim if the state gave notice and counsel did not protect petitioner's confrontation rights by advising that the defense wanted to cross-examine the personal that produced the CAD records.

The record does reflect however, that Officer Admire relied on the CAD records

20

providing testimony related to the elements of the crime of aggravated flight.

A. At least two occasions. And I was concentrating on watching the vehicle as well as the occupants in the vehicle. At one point, I advised central that we were in excess of 90 miles an hour.

Q. Is there a CAD, C-A-D printout, that takes place as a result of this police pursuit and apprehension?

A. Yes sir, there is.

Q. Have you reviewed that in preparation for your testimony?

A. Yes I have.

Q. Does it reflect, in fact, that they did get your broadcast that you were in excess of 90?

A. Yes sir.

Q. What is the posted speed limit on this particular highway?

A. It is 55 miles an hour.[15]

## Melendez-Diaz Violation

In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. United States Constitution Amendment VI. The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination. *Crawford, Supra.* 541 U.S. At 53-54, 124 S.Ct. 1354, 1365.

This case repeatedly shows the prosecution continually denying petitioner his Constitutional Rights to the Confrontation Clause. The jurisprudence in this matter in plain and

---

15  See Trial Record P. 358.

concise. In *State v. Cunningham*, 2004-2200 (La. 6/13/05), 903 So.2d 1110, 1122, the Louisiana Supreme Court held that Statutory scheme set forth in La.R.S. 15:499-501 is not unconstitutional under *Crawford*. (FN3). The court noted that if a defendant requests a subpoena at least five days prior to trial for the person who performed the analysis of the evidence, or if the person responds to the subpoena, the certificate is not prima facie proof of its contents, has no evidentiary value, and the State has to call the relevant [2010-0451 La.App. 1 Cir.] witnesses to prove its case. The Court also found "[f]rom a practical standpoint, these statutes are no different from a situation in which the state offers hearsay evidence at trial. If defendant does no contemporaneously object, the hearsay is allowed into evidence.

## "Notice and Demand"

The record provided to petitioner does not reveal that notice was given by the state that the CAD records would be used. It is nowhere in the record, or discovery. If in fact, it is established at an evidentiary hearing that the state did make such notice, petitioner would have reserved his right to raise this issue on another ineffective assistance of counsel claim for failing to protect petitioner's confrontation rights by requesting to cross-examine the CAD system technician(s) as to the use and accuracy of the system. If the CAD system only reported the Officer's speed in catching up with the fleeing automobile and does not provide any indication that the officer was reporting the petitioner's speed, then the information was misused in order to suggest to the jury that the reported speed of 90 MPH was the speed the petitioner was going.[16]

---

16 CAD systems are only as accurate as the information that is put into them. See *State v. Johnson*, 6 So.3d 195, 2008-1551 (La.App. 4 Cir. 2009)(Defendant was arrested) based on warrant which computer aided dispatch (CAD) system said was outstanding, but was subsequently found to be invalid.

3. PETITIONER'S CONSTITUTIONAL RIGHTS TO DUE PROCESS UNDER THE FEDERAL CONSTITUTION WERE VIOLATED WHEN THE STATE IMPROPERLY VOUCHED FOR THE CREDIBILITY OF OFFICER ADMIRES TESTIMONY DENYING PETITIONER A FAIR TRIAL.

Petitioner's had two defense witnesses testifying that petitioner did not cross over into ongoing traffic and their testimonies that petitioner was not speeding, contrary to Officer Admires testimony, this case was one purely based on the credibility of the witness. During closing arguments, the State vouched for the credibility of Officer Admire.

Improper vouching occurs when the prosecutor places the prestige of government behind the witnesses by providing personal assurances of the witnesses veracity. *United States v. Kerr*, 981 F.2d 1050.

The following statement was made by the prosecutor during closing arguments in petitioner's trial:

> [a]nd according to Jack Admire, who served his country in the military, who spends everyday of his life putting on that uniform. And when shots are fired we run away, he runs towards them. His life is devoted to law enforcement. And he is going to perjure himself on the stand. He is going to come in here and tell you an outright lie. And in addition, he is going to call it in. he is going to call it in to CAD system we are over 90 miles an hours. He is going to set all this up ahead of time to make a case that he has never seen them before in his life.[17]

Additional vouching by the prosecution continued during closing arguments as follows:

> I'll suggest to you when you evaluate the testimony of the officers that are involved, each of those men understands what it means when they come into court and take an oath to tell the truth. They understand that their reputation is everything. And each of us may have come to a point in our lives, in our careers, when we have been doing the same thing for a year, two years, five years. And we realize that it's not we accomplish today, but it's whether or not the man next to me can trust me. It's whether or not he knows I've got his back. And when I say something, it means I'm telling the truth. And when I tell them something that

---

17 See Trial Record P. 422.

23

helps me or hurts me today, whether or not I close the deal today or I don't, whether or not I lose the business today or not, it doesn't matter as long as I know I'm going to be in this job for a long time. And my reputation for telling the truth is important. And everyone of them knows it. If they get burned lying in court one time, they know it's a small courthouse. When they sing up for the job, they know. Their reputation is the most important thing about them. I'll submit to you that they told you the truth today. Simply came upon a situation, acted the best they could. Safely apprehended three men. Safely took two guns off the street. That the defendant knew he had a prior conviction. That's why he gave a fake name. That's why he ran so hard. That's why he is guilty. Thank You.[18]

During direct questioning the state further sought to subscribe the Police Officer's testimony by employing personal questions on direct examination not relevant to the charges on trial. All of this was done to personally vouch for the state's witnesses testimony, which is in total violation of petitioner's Constitutional Rights to Due Process.

The CAD system report was used in this case to "refresh the officers memory" thereby bolstering the officers credibility in proving the petitioner was traveling over twenty five miles an hour over the speed limit which was required to prove an essential element of the crime.

In *State v. Beauchamp*, 2010-045, 49 So.3d 5 (La.App. 1 Cir. 9/10/10); the court held: [t]hat admission of certificate of analysis, related to analysis by criminalistic laboratory of substance that defendant sold to undercover officer, did not violate Confrontation Clause because defendant could have exercised his Confrontation Clause right, before trial, under State's "notice and demand" statute. In Beauchamp, the defendant argued the State failed to prove all of the elements of the offense, alleging the use of a scientific analysis report to establish that the substance distributed was cocaine violated *Melendez-Diaz v. Massachusetts*, U.S. At ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 2009). The court said [there] is no conceivable reason why (a defendant) cannot similarly be compelled to exercise his Confrontation Clause

18 See Trial Record P. 426.

rights before trial. *Melendez-Diaz* ___ U.S. At ___, 129 S.Ct. At 2530-2541.

"The concerns underlying our reactions against improper prosecutorial arguments to the jury are implicated here, but not to the extent that we conclude that the jury's deliberations were compromised. The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its [470 U.S. 19] own view of the evidence. See > *Berger v. United States*, 295 U.S. , at 88-89, 55 S.Ct., at 633."

The State clearly violated petitioner's rights to Confrontation as the United States Supreme Court requires something more than a prosecutor improperly vouching for a witness testimony and thereby, this Honorable Court should grant petitioner's habeas petition.

### 4. PETITIONER'S WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN COUNSEL FAILED TO ALLOW PETITIONER TO TAKE THE STAND IN HIS OWN DEFENSE.

On any claim of ineffective assistance of counsel based on failure to investigate must be directly assessed for reasonableness in all circumstances, applying heavy measure of deference to counsel's judgments. *U.S.C.A. Const. Amend. 6*.

The decisions have recognized that attorneys must have a wide degree of latitude to make strategic decisions on the basis of their knowledge of the law. The United States Supreme

Court has stressed that the judgment of an attorney should not be second guessed, as long as it falls within the sphere of professional reasonableness. *Strickland v. Washington*, 466 U.S. 689, 104 S. Ct., at 2065. Nevertheless, an attorney's decision to advance a defense that is wholly unfounded in law, combined with a failure to investigate the merit of accepted and persuasive defenses, cannot be characterized as "sound trial strategy." See *Michel v. New York*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955).

> "Indeed, such a decision is not strategic at all, it is incompetent." "the failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis..."

*Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 372, 88 L. Ed.2d 203 (1985)(White, J. concurring in judgment). "In this case, that failure was aggravated by the additional failure to discover what meritorious defenses were available before rejecting them in favor of frivolous technical defense. This conduct is professionally unreasonable".

It is well settled that the right of a criminal defendant to testify on his or her own behalf in a criminal proceeding is a fundamental right of the accused protected by the Constitution of the United States of America and the Constitution of the State of Louisiana as interpreted by state and federal jurisprudence. The United States Supreme Court, in *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) has recognized a criminal defendants right to testify is fundamental and personal to the defendant. "[O]nly such basic decisions as to whether to plead guilty, waive a jury trial, or testify in one's own behalf are ultimately for the accused to make." The Louisiana Supreme Court has stated that when a petitioner makes it apparent to his counsel that he wishes to testify, and counsel refuses to allow a petitioner to do so, such a refusal should be treated as a violation of the Fifth, Sixth, and Fourteenth

26

amendments to the United States Constitution. The Louisiana Constitution also expressly guarantees the defendant the right to testify in his own defense. *La. Const. Art. 1 § 16.* However, as recognized implicitly by the Louisiana Supreme Court in *State v. Hampton*, 818 So.2d 720 (La. 3/22/02), a petitioner's post conviction relief claim alleging denial of his right to testify in his own defense is not, for obvious reasons, the end of the analysis for reviewing court when determining the merits of petitioner's claim that his constitutional rights have been violated.

In determining whether a defendant's right to testify was violated or waived by his silence during trial, the court in *Hampton* looked to *Passos-Paternina v. United States* for guidance. In analyzing this situation *Passos-Paternina, supra,* stated:

> "[A]s an initial matter, absent extraordinary circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify. The court should assume that a criminal defendant, by not 'attempting taking the stand', has knowingly and voluntarily waived his right."

In the instant case, that "presumption" that the defendant knowingly and voluntarily waived his right to testify cannot be justified as trial counsel in a normal situation will advise the petitioner about his prior convictions. That it would not be in his best interest to testify due to the fact that the state will bring the priors out on cross-examination. The defense stipulated to the petitioner's prior conviction so any damage in that regard was already done in the stipulation. The petitioner would have testified that he did not know the guns were in the car. The mere fact that he did not take either gun with him when he ran into the woods supports that circumstantially, and the petitioner would have testified that he never went over 25 miles an hour over the speed limit, as required to convict. Juries usually want to hear an accused's side

27

of the story, and in this case the petitioner's testimony along with the other defense witnesses could very well have swayed the jury. The petitioner wanted to testify and repeatedly requested his counsel to allow him to, however, counsel was adamant about not allowing petitioner to take the stand. It is necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law which includes a right to be heard and offer testimony. A person's right to be heard in his own defense. A right to his day in court, are basic rights in our system of jurisprudence, and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and be represent by competent counsel. *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

A criminal defendant clearly cannot be compelled to testify by defense counsel who believes it would be in the defendant's best interest not to take the stand, it is only logical, as the Supreme Court has reasoned, that the reverse also be true. A criminal defendant cannot be compelled to remain silent by defense counsel. *Teague*, 953 F.2d 1532. In fact, the "most important witness for the defense in many cases is the defendant himself." *Rock, Supra*.

Juries supposedly do not hold it against the defendant when he does not take the stand, but studies have shown that when jurors are interviewed after a trial, and the defendant did not testify, they (jurors) often times wonder why the defendant did not take the stand if he did not have anything to hide.[19]

Due to the above described circumstances, in that petitioner was denied his right to testify by defense counsel, who ultimately made the decision, instead of allowing petitioner the choice. Petitioner contends that it should have been his decision whether or not to testify and

---

19 The American Jury, Phoenix ed. 1971.

that it was not his defense counsels right to make the final decision.

## CONCLUSION AND PRAYER

Petitioner, Darren O'Neal Dykes #470970, respectfully prays that this Honorable Court will accept his foregoing "Memorandum of Law in Support of Petition for Federal Habeas Corpus" and consider same in concert with his "Application for Federal Habeas Corpus" pursuant to *28 U.S.C.A. § 2254*. Petitioner, further prays that this Honorable Court, after due consideration of the magnitude of these Constitutional Violations and the facts presented by Petitioner in these proceedings, that his federal habeas corpus should be granted and that his underlying state conviction and sentence should be vacated, and set aside.

Respectfully submitted,

*Darren O'Neal Dykes #470970*
Darren O'Neal Dykes #470970
Camp C Jaguar Unit
Louisiana State Penitentiary
Angola, Louisiana   70712

## CERTIFICATE OF SERVICE

I, Darren O'Neal Dykes #470970, hereby certify that a true and correct copy of the forgoing has been served upon the Respondent herein, through the Office of the District Attorney, Parish of St. Tammany, by placing same in the Institution's Legal Mail System for depositing in the U.S. Mail, properly addressed and with proper, first-class postage pre-paid, this 22nd day of February, 2013.

*Darren O'Neal Dykes*
Darren O'Neal Dykes

29