## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DARREN O'NEAL DYKES**                                    **CIVIL ACTION**

**versus**                                                **NO. 13-346**

**N. BURL CAIN, WARDEN**                                   **SECTION: "E" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Darren O'Neal Dykes, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On April 15, 2008, he was convicted under Louisiana law of attempted possession of a firearm by a convicted felon and aggravated flight from an officer.[1] On June 17, 2009, he was found to be a third offender and sentenced as such to a term of fifteen years imprisonment on the firearm conviction and to a term of life imprisonment on the aggravated

---

[1]   State Rec., Vol. II of IV, trial transcript, p. 457; State Rec., Vol. I of IV, minute entry dated April 15, 2008; State Rec., Vol. I of IV, jury verdict form.

flight conviction.  It was ordered that those sentences be served concurrently and without benefit of probation, parole, or suspension of sentence.[2]  On February 12, 2010, the Louisiana First Circuit Court of Appeal affirmed his convictions, habitual offender adjudications, and sentences.[3]  The Louisiana Supreme Court then denied his related writ application on October 8, 2010.[4]

On or about September 16, 2011, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on February 28, 2012.[6]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on June 20, 2012,[7] and by the Louisiana Supreme Court on November 21, 2012.[8]

On or about February 22, 2013, petitioner filed the instant federal application seeking *habeas corpus* relief.[9]  The state concedes that the application is timely and that petitioner has exhausted his remedies in the state courts.[10]

---

[2]  State Rec., Vol. II of IV, transcript of June 17, 2009; State Rec., Vol. I of IV, minute entry dated June 17, 2009; State Rec., Vol. I of IV, Reasons for Judgment dated June 19, 2009.

[3]  State v. Dykes, No. 2009 KA 1447, 2010 WL 532413 (La. App. 1st Cir. Feb. 12, 2010); State Rec., Vol. III of IV.

[4]  State v. Dykes, 46 So.3d 1264 (La. 2010) (No. 2010-KO-0589); State Rec., Vol. III of IV.

[5]  State Rec., Vol. III of IV.

[6]  State Rec., Vol. III of IV, Order dated February 28, 2012.

[7]  State v. Dykes, No. 2012 KW 0516 (La. App. 1st Cir. June 20, 2012); State Rec., Vol. III of IV.

[8]  State *ex rel.* Dykes v. State, 102 So.3d 56 (La. 2012) (No. 2012-KH-1682); State Rec., Vol. III of IV.

[9]  Rec. Doc. 1.

[10]  Rec. Doc. 12, pp. 3-4.

- 2 -

I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  <u>Bell</u>, 535

U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

<u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in <u>Williams</u> that an unreasonable application is different from an

- 4 -

incorrect one."   Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."),

cert. denied, 132 S.Ct. 1537 (2012).

>       While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> >       If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

II.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> On March 23, 2006, at approximately 11:30 a.m., St. Tammany Parish Sheriffs Office Deputy Hillary Mayo[FN2] conducted a traffic stop in St. Tammany Parish of a Lincoln automobile driven by the defendant, and in which Phillip Kualski Chatman and Hamadi Ingram were passengers.
>
> > [FN2] Deputy Mayo was killed in the line of duty prior to trial.
>
> St. Tammany Parish Sheriff's Office Corporal Jack Admire responded to the scene to assist Deputy Mayo.  As Corporal Admire was pulling up behind Deputy Mayo's police car, the defendant suddenly drove off in the Lincoln, southbound on Highway 21. Corporal Admire activated his unit's siren and lights and pursued the defendant.  According to Corporal Admire, during the ensuing chase, the defendant crossed into oncoming traffic on two occasions and travelled in excess of 90 miles-per-hour on a highway with a posted speed limit of 55 miles-per-hour.  Corporal Admire also indicated that during the pursuit of the defendant on the highway, there was the potential that human life was endangered.  After an approximately five-mile chase, the defendant pulled the Lincoln into Backroads Mercantile Grocery on Highway 21, and fled on foot.  Deputy Mayo arrived at the scene and chased the defendant on foot, while Corporal Admire helped to secure the passengers of the Lincoln.  After the passengers were secured, Corporal Admire radioed Deputy Mayo for his location.  Deputy Mayo provided his location and indicated that the defendant had taken off his tennis shoes and climbed over an electrified fence.  The defendant was captured after being tracked by a bloodhound.
>
> A subsequent search of the Lincoln revealed a loaded Glock 9mm handgun in front of the driver's seat and a loaded Ruger 9mm handgun, with a Glock tactile laser, in front of the front passenger seat.  Both weapons would have been accessible to the driver of the Lincoln. While being arrested, one of the passengers claimed that the guns belonged to him.  During booking, the defendant falsely identified himself as "Tony Dykes."

Chatman testified at trial. He claimed that the Lincoln and the guns belonged to him, and that the defendant had only been driving the Lincoln for ten or fifteen minutes prior to the traffic stop. According to Chatman, the defendant had no idea that the guns were in the Lincoln. Chatman also disputed that the defendant exceeded 55 miles-per-hour during the chase and denied that the defendant drove against the flow of traffic.

Emilda Matthews also testified at trial. She was one of the defendant's friends. She claimed she was following him in another vehicle when he fled from the police. She claimed that the defendant drove at approximately 55 miles-per-hour and travelled only approximately one-half mile or one mile down the road. She also disputed that the defendant drove against the flow of traffic during the chase.

The State and the defendant stipulated that at the time of the incident, the defendant was on parole supervision following his July 15, 2004 guilty plea to possession of OxyContin.[11]

### III.  Petitioner's Claims

### A. Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to support his convictions. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In assignment of error number 1, the defendant argues that on count II, there was insufficient evidence that his refusal to bring the Lincoln to a stop endangered human life because Matthews testified that the defendant did not speed or drive into oncoming traffic during the chase. He does not dispute the sufficiency of the proof of the other elements of La. R.S. 14:108.1. In assignment of error number 2, the defendant argues that on count I, there was insufficient evidence of his actual knowledge of the firearms in the Lincoln or of his constructive possession of the weapons.
>
> The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light

---

[11] Dykes, 2010 WL 532413, at *1-2; State Rec., Vol. III of IV.

most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt.  In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded.  State v. Wright, 98-0601, p. 2 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, 2000-0895 (La. 11/17/00), 773 So.2d 732 (quoting La. R.S. 15:438).    When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution.  When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.  Wright, 98-0601 at 3, 730 So.2d at 487.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury.  State v. Calloway, 2007-2306, pp. 1-2 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).

In regard to count I, we are also guided by State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251 (La. 1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).  Therein, the Louisiana Supreme Court recognized the legitimacy of a "compromise verdict," i.e., a legislatively approved responsive verdict that does not fit the evidence, but that (for whatever reason) the jurors deem to be fair, as long as the evidence is sufficient to sustain a conviction for the charged offense.  If the defendant timely objects to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict, the court overrules the objection, and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict.  However, if the defendant does not enter an objection (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense,

whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury.  State ex rel. Elaire, 424 So.2d at 251.

In the instant case, the trial court charged the jury on attempted possession of a firearm by a convicted felon without a timely defense objection.  Accordingly, on count I, we review the sufficiency of the evidence to support possession of a firearm by a convicted felon.

It is unlawful for any person who has been convicted of any violation of the Uniform Controlled Dangerous Substances Law that is a felony to possess a firearm or carry a concealed weapon.  La. R.S. 14:95.1(A).  OxyContin contains oxycodone.  State v. Jarreil, 2007-1720, p. 3 n. 2 (La.App. 1 Cir. 9/12/08), 994 So.2d 620, 625 n. 2.  Possession of oxycodone is a violation of the Uniform Controlled Dangerous Substances Law that is a felony.  See La. R.S. 40:964, Schedule II(A)(1)(o) (prior to amendment by 2008 La. Acts No. 67, § 1); La. R.S. 40:967(C)(2).

Whether the proof is sufficient to establish possession under La. R.S. 14:95.1 turns on the facts of each case.  Further, guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence.  State v. Johnson, 2003-1228, p. 5 (La. 4/14/04), 870 So.2d 995, 998.

Constructive possession of a firearm occurs when the firearm is subject to the offender's dominion and control.  Louisiana cases hold that a defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared.  However, mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession.  Johnson, 2003-1228 at 5-6, 870 So.2d at 998-99.

Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense.  The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle.  La. R.S. 14:108.1(C) (prior to amendment by 2009 La. Acts No. 6, § 1).  Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle exceeds the posted speed limit by at least

twenty-five miles per hour and travels against the flow of traffic. La. R.S. 14:108.1(D) (prior to amendment by 2009 La. Acts No. 6, § 1).

After a thorough review of the record, we are convinced that a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of possession of a firearm by a convicted felon, aggravated flight from an officer, and the defendant's identity as the perpetrator of those offenses. In regard to count I, the State relied on the defendant's flight to establish his guilty knowledge of the firearms in the Lincoln. The defense argued that the defendant fled because he knew that marijuana was in the car and relied on the testimony of Chatman to defeat the defendant's guilty knowledge of the presence of the guns. The fact that the jury did not acquit the defendant on count I indicates that it found the testimony of Chatman unconvincing. Absent a showing that the defendant was not granted the fundamental due process of law, it is not appropriate for this court to impinge on the fact finder's discretion and reject that credibility determination. See Johnson, 2003-1228 at 7-8, 870 So.2d at 1000. In regard to count II, the defendant's argument requires that this court find that the jury erred in finding the testimony of the witnesses called by the defense less credible than the testimony of Corporal Admire. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429, p. 5 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La. 10/17/97), 701 So.2d 1331. Further, in reviewing the evidence on counts I and II, we cannot say that the jury's determinations were irrational under the facts and circumstances presented to them. See State v. Ordodi, 2006-0207, p. 14 (La. 11/29/06), 946 So.2d 654, 662. These assignments of error are without merit.[12]

---

[12] Dykes, 2010 WL 532413, at *2-4; State Rec., Vol. III of IV.

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[13]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that he has made no such showing.

Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover,

---

[13] State v. Dykes, 46 So.3d 1264 (La. 2010) (No. 2010-KO-0589); State Rec., Vol. III of IV.

because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."   Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012).[14]

The true crux of petitioner's argument is that the evidence was insufficient because the defense presented witnesses who contradicted the state's witnesses and exculpated him. However, as the state court noted, the jury obviously found the state's witnesses more credible than those called by the defense.  Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal *habeas* court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson [v. Virginia, 443 U.S. 307 (1979)], the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2

---

[14] Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011), cert. denied, 132 S.Ct. 1713 (2012); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S.Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

(5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under these doubly-deferential standards of review which must be applied by this federal *habeas* court, relief is not warranted.

## B.  Confrontation Clause

Petitioner's second claim is that his rights under the Confrontation Clause were violated at trial. In the post-conviction proceedings, the state district court denied that claim on the merits,[15] and the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief without assigning reasons.[16]  For the following reasons, this federal court must defer to the state court decision denying relief because petitioner has not shown that it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

---

[15]  State Rec., Vol. III of IV, Order dated February 28, 2012.

[16]  State v. Dykes, No. 2012 KW 0516 (La. App. 1st Cir. June 20, 2012); State *ex rel.* Dykes v. State, 102 So.3d 56 (La. 2012) (No. 2012-KH-1682); State Rec., Vol. III of IV.

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]his bedrock procedural guarantee applies to both federal and state prosecutions." Crawford v. Washington, 541 U.S. 36, 42 (2004).   Simply put, "the Confrontation Clause prohibits (1) testimonial out-of-court statements; (2) made by a person who does not appear at trial; (3) received against the accused; (4) to establish the truth of the matter asserted; (5) unless the declarant is unavailable and the defendant had a prior opportunity to cross examine him."   United States v. Gonzales, 436 F.3d 560, 576 (5th Cir. 2006).   Here, there simply was no violation.

Petitioner's first argument with respect to this claim challenges the fact that the state's witnesses were allowed to testify regarding statements made by Deputy Hillary Mayo.   During opening statements, the prosecutor referenced the fact that Mayo was the officer who initiated the traffic stop which eventually led to petitioner's arrest.   Defense counsel objected to all references to Mayo's involvement, in that Mayo had died and therefore would not be available for cross-examination at trial.   The judge overruled the objection, noting: "It is acceptable because it gives the officer the reason why he is doing that.   For the same argument, I'm going to allow him to allude to the report that will be substantiated by subsequent testimony."[17]   As anticipated, various officers at trial did in fact testify that their involvement in the case resulted from Mayo's initial calls for assistance in the case.[18]   The judge again explained that such testimony was admissible, stating:

---

[17] State Rec., Vol. II of IV, trial transcript, pp. 342-44.

[18] See, e.g., State Rec., Vol. II of VI, trial transcript, pp. 353-557, 368-70, 375-76, and 380-81.

- 14 -

> An out-of-court statement is not hearsay if its purpose as evidence is to not to prove its truth but to explain why a person took a particular course of action.  I think you can ask the question, Why did you do that?  Well, I received a report from Officer Mayo.[19]

For the reasons noted by the trial judge, the challenged statements violated neither the state rules of evidence against hearsay nor the federal Confrontation Clause.  Because Mayo's statements were not offered to prove the truth of the underlying facts therein but rather for the limited purpose of explaining how and why the testifying officers came to be involved in the case and the sequence of events leading to petitioner's arrest, they were not hearsay under state law.  See, e.g., State v. Calloway, 324 So.2d 801, 809 (La. 1976).  For essentially the same reason, their admission likewise did not violate petitioner's rights under the federal law to confront his accusers.  As the United States Seventh Circuit Court of Appeals has explained:

> The Confrontation Clause of the Sixth Amendment bars out-of-court testimonial statements unless the defendant had a prior opportunity to cross-examine the declarant and the declarant is unavailable to testify. [United States v.] Van Sach, 458 F.3d [694,] 701 [(7th Cir. 2006)].  However, the Sixth Amendment does not bar out-of-court statements when the statement is not offered to prove the truth of the matter asserted; thus, the Sixth Amendment poses no bar to the admission of non-hearsay statements.  See Crawford v. Washington, 541 U.S. 36, 60 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); Van Sach, 458 F.3d at 701; [United States v.] Tolliver, 454 F.3d [660,] 665 [7th Cir. 2006]. When out-of-court statements are not offered to prove the truth of the matter asserted, the Confrontation Clause is satisfied if the defendant had the opportunity to cross-examine the person repeating the out-of-court statement.  See Tennessee v. Street, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).

---

[19]  State Rec., Vol. II of VI, trial transcript, pp. 353-54.

- 15 -

United States v. James, 487 F.3d 518, 525 (7th Cir. 2007).  Because the officers' statements

concerning Mayo were not hearsay and because the testifying officers were themselves available

for cross-examination, the Confrontation Clause simply was not implicated by the limited use of

Mayo's statements.[20]

   Petitioner's final argument with respect to his Confrontation Clause claim concerns

the fact that Corporal Admire's testimony referenced "CAD" ("computer-aided dispatch") records.

In support of that argument, he points to the following exchange during Admire's testimony:

------

[20] The Court notes that petitioner also complains that testimony was admitted concerning Mayo's actions during the apprehension, his sealing of the evidence bags, and his booking of petitioner. However, that testimony did not implicate the protections afforded by the Confrontation Clause. The foregoing are actions, not "statements" from Mayo.  Moreover, the officers who personally witnessed Mayo performing those actions testified concerning what they observed and were subject to cross-examination.

   Further, relief also is not warranted to the extent that petitioner is complaining that Admire testified that Mayo "said the only ID he had on [the driver of the vehicle] was a business card for a gun dealer."  State Rec., Vol. II of IV, trial transcript, p. 355.  That bit of hearsay, although relatively inconsequential, was still improper.  That said, defense counsel objected to the testimony, the objection was *sustained*, and no further relief (such as an admonishment) was requested. Moreover, at the end of trial, the judge specifically instructed the jurors:  "You may not consider evidence which you were instructed to disregard or which an objection was sustained."  State Rec., Vol. II of IV, trial transcript, pp. 435-36.  Therefore, while the hearsay statement was improper, the error was corrected at trial and does not warrant relief in this proceeding.  See Mass v. Quarterman, 446 F. Supp. 2d 671, 689-90 (W.D. Tex. 2006) ("Insofar as petitioner complains about the complainant's hearsay testimony attributing a statement to Eugenia Evans, petitioner ignores the fact the state trial court not only sustained petitioner's objection to this portion of the complainant's testimony but also directed the jury to disregard same.  Juries are presumed to follow their instructions.  Accordingly, this aspect of petitioner's Confrontation Clause claim also fails to rise above the level of harmless error." (citation omitted)); see also Staton v. Warren, No. 04-CV-73287, 2005 WL 2010180, at *6 (E.D. Mich. Aug. 16, 2005) ("[A]ny prosecutorial misconduct resulting from the prosecutor's direct examination of the victim regarding hearsay evidence on this subject did not prejudice petitioner, where the defense objection to this hearsay testimony was sustained by the trial court."); Weeks v. Senkowski, 275 F. Supp. 2d 331, 342 (E.D.N.Y. 2003) ("[W]hen the prosecutor queried a detective about hearsay, a defense objection was sustained by the court, thereby precluding any chance of prejudice to the defendant.").

A.      ... And I was concentrating on watching the vehicle as well as the occupants of the vehicle.  At one point, I advised central that we were in excess of 90 miles an hour.

Q.      Is there a CAD, C-A-D printout, that takes place as a result of this police pursuit and apprehension?

A.      Yes, sir, there is.

Q.      Have you reviewed that in preparation for your testimony?

A.      Yes, I have.

Q.      Does it reflect, in fact, that they did get your broadcast that you were in excess of 90?

A.      Yes, sir.[21]

Although petitioner's argument on this point is somewhat convoluted, he appears to be contending that Admire's reference to the "CAD" report was a Confrontation Clause violation because the individual who entered Admire's report into the system was not available for cross-examination.  However, that contention fails for at least two reasons.  First, the Confrontation Clause requires only that the *declarant* be available for cross-examination.  With respect to a "CAD" report, the declarant was the person who made the statement which was entered into the "CAD" system, i.e. Admire.  See, e.g., State v. Baylor, No. A-3891-0714, 2010 WL 4028585, at *8 (N.J. Super. A.D. Aug. 24, 2010).  Because Admire was available for cross-examination regarding his own statement, there was no Confrontation Clause violation.  Second, as noted previously, the Confrontation Clause applies only to "testimonial" statements.  See, e.g., Davis v. Washington, 547 U.S. 813, 821 (2006). Statements made primarily to establish or prove past events potentially relevant to later criminal

---

[21]  State Rec., Vol. II of VI, trial transcript, p. 358.

prosecution are "testimonial," while statements made primarily for the purpose of enabling police to respond to an ongoing emergency are not.  Id. at 822. The statements documented in the "CAD" report were clearly in the latter category and therefore simply did not implicate the Confrontation Clause.  See, e.g., Baylor, 2010 WL 4028585, at *8-9.

      For these reasons, the undersigned finds that there was no Confrontation Clause violation with respect to either Mayo's statements or the "CAD" report.  However, even if the United States District Judge concludes that there was a Confrontation Clause violation, it must be noted that relief still would not be warranted.  The United States Fifth Circuit Court of Appeals has explained:

> [V]iolations of the Confrontation Clause are still subject to harmless error analysis. ... To determine whether the error was harmless, we consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

Hafdahl v. Johnson, 251 F.3d 528, 539-40 (5th Cir. 2001) (quotation marks omitted).

      In the instant case, petitioner's guilt was convincingly established through the testimony of the officers involved in petitioner's apprehension and arrest.  The statements of Mayo and the passing reference to the "CAD" report were clearly inconsequential and so cannot be said to have had "'a substantial and injurious effect or influence in determining the jury's verdict.'" Taylor v. Cain, 545 F.3d 327, 336 (5th Cir. 2008) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).  Accordingly, any error was harmless and would not warrant federal relief.

<u>C.  Improper Vouching</u>

Petitioner's third claim is that his rights were violated when the prosecutor improperly vouched for the credibility of Corporal Admire.  In support of this claim, petitioner points to the following comments made by the prosecutor during his closing argument:

> And according to Jack Admire, who served his country in the military, who spends every day of his life putting on that uniform. And when shots are fired we run away, he runs toward them.  His life is devoted to law enforcement.  And he is going to perjurer himself on the stand.  He is going to come in here and tell you an outright lie. And in addition, he is going to call it in.  He is going to call it in to CAD system we are over 90 miles an hour.  He is going to set all this up ahead of time to make a case that he has never seen them before in his life.[22]

Petitioner also points to the following additional comments from the prosecutor's closing argument:

> I'll suggest to you when you evaluate the testimony of the officers that are involved, each of those men understands what it means when they come in to court and take an oath to tell the truth. They understand that their reputation is everything.
>
> And each of us may have come to a point in our lives, in our careers, when we have been doing the same thing for a year, two years, five years.  And we realize that it's not what we accomplish today, but it's whether or not the man next to me can trust me.  It's whether or not he knows I've got his back.   And when I say something, it means I'm telling the truth.
>
> And when I tell them something that helps me or hurts me today, whether or not I close the deal today or I don't, whether or not I lose the business today or not, it doesn't matter as long as I know I'm going to be in this job for a long time.  And my reputation for telling the truth is important.  And everyone one of them knows it.
>
> If they get burned lying in court one time, they know it's a small courthouse.  When they sign up for the job, they know.  Their reputation is the most important thing about them.

---

[22]  State Rec., Vol. II of IV, trial transcript, p. 422.

I'll submit to you that they told you the truth today.  Simply came upon a situation, acted the best they could.  Safely apprehended three men.  Safely took two guns off the street.  That the defendant knew he had a prior conviction.  That's why he gave a fake name. That's why he ran so hard.  That's why he is guilty.  Thank you.[23]

In the state post-conviction proceedings, the state district court denied petitioner's claim on the merits,[24] and the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief without assigning reasons.[25]   For the following reasons, this federal court must defer to the state court decision denying relief because petitioner has not shown that it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Clearly, it is improper for a prosecutor to vouch for the credibility of a witness or to express an opinion as to the defendant's guilt *if* there is underlying an implication that the prosecutor's statements are based on additional personal knowledge about the witness or the facts of the case which are in not in evidence.  See, e.g., United States v. Munoz, 150 F.3d 401, 414-15 (5th Cir. 1998); Richthofen v. Cain, Civ. Action No. 05-5701, 2008 WL 630477, at *49 n.81 (E.D. La. Mar. 7, 2008); Spicer v. Cain, Civ. Action No. 07-3770, 2007 WL 4532221, at *9 (E.D. La. Dec. 19, 2007).   However, such comments are not improper where it is apparent to the jury that the comments are based on the evidence presented at trial rather than on personal knowledge of facts

---

[23]   State Rec., Vol. II of IV, trial transcript, pp. 426-27.

[24]   State Rec., Vol. III of IV, Order dated February 28, 2012.

[25]   State v. Dykes, No. 2012 KW 0516 (La. App. 1st Cir. June 20, 2012); State *ex rel.* Dykes v. State, 102 So.3d 56 (La. 2012) (No. 2012-KH-1682); State Rec., Vol. III of IV.

outside the record.  See, e.g., Nichols v. Scott, 69 F.3d 1255, 1282-83 (5th Cir. 1995); Richthofen, 2008 WL 630477, at *49 n.81; Spicer, 2007 WL 4532221, at *9.

In the instant case, when the prosecutor's comments are reviewed in context and in their entirety, there is no reasonable basis for concluding that the jurors would have interpreted the comments as based on personal knowledge of the facts outside the record.  Accordingly, the state court's decision rejecting this claim was not unreasonable or contrary to clearly established federal law, and, therefore, is entitled to deference by this Court.

### D.  Ineffective Assistance of Counsel

Petitioner's final claim is that his counsel was ineffective.  The United States Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If the Court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance

is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).   Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).   Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

In the state post-conviction proceedings, the state district court denied the ineffective assistance of counsel claim on the basis that petitioner had not met his burden of proof,[26] and the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court then likewise denied relief

---

[26] State Rec., Vol. III of IV, Order dated February 28, 2012.

without assigning additional reasons.[27]  Because such a claim presents a mixed question of law and

fact, this Court must defer to the state court decision denying relief unless that decision was

"contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell,

313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that,

under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact

*doubly* deferential:

> The pivotal question is whether the state court's application
> of the Strickland standard was unreasonable.  This is different from
> asking whether defense counsel's performance fell below
> Strickland's standard.  Were that the inquiry, the analysis would be
> no different than if, for example, this Court were adjudicating a
> Strickland claim on direct review of a criminal conviction in a United
> States district court.  Under AEDPA, though, it is a necessary
> premise that the two questions are different.  For purposes of §
> 2254(d)(1), an *unreasonable* application of federal law is different
> from an *incorrect* application of federal law.  A state court must be
> granted a deference and latitude that are not in operation when the
> case involves review under the Strickland standard itself.
>     A state court's determination that a claim lacks merit
> precludes federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's decision.  Yarborough
> v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938
> (2004).  And as this Court has explained, "[E]valuating whether a
> rule application was unreasonable requires considering the rule's
> specificity.  The more general the rule, the more leeway courts have
> in reaching outcomes in case-by-case determinations." Ibid.  "[I]t is
> not an unreasonable application of clearly established Federal law for
> a state court to decline to apply a specific legal rule that has not been
> squarely established by this Court." Knowles v. Mirzayance, 556

---

[27] State v. Dykes, No. 2012 KW 0516 (La. App. 1st Cir. June 20, 2012); State *ex rel.* Dykes v.
State, 102 So.3d 56 (La. 2012) (No. 2012-KH-1682); State Rec., Vol. III of IV.

U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under 2254(d) is all the more difficult.  *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 788 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claim.

Petitioner's claim is based on his allegation that he was prevented from testifying at trial by his attorney.  "[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."  Rock v. Arkansas, 483 U.S. 44, 49 (1987).  However, as noted by the state courts, petitioner simply failed to meet his burden of proof with respect to his claim in the instant case.  Specifically, he has offered nothing other than his own self-serving allegations in support of the claim.  He does not allege and the record does not suggest that he ever made known to the trial court that his counsel was refusing to allow him to testify despite his stated desire to do so.  Of course, the mere fact that petitioner failed to stand up in open court and insist on testifying should not be dispositive of the issue.  See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States v. Araujo, 77 Fed. App'x 276 (5th Cir. 2003).  Nevertheless, this Court cannot ignore the fact that petitioner has never presented *any* evidence to corroborate his allegations, and that dooms his claim.  As the United States Seventh Circuit Court of Appeals noted in a case in which a petitioner alleged that he had been denied the right to testify by his counsel:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable.  It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen.  Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...
> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade

> his client to testify – to give the claim sufficient credibility to warrant
> a further investment of judicial resources in determining the truth of
> the claim.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); see also Richthofen v. Cain, Civ. Action

No. 05-5701, 2008 WL 630477, at *44-45 (E.D. La. Mar. 7, 2008); Curtis v. Cain, Civ. Action No.

06-1676, 2008 WL 482849, at *8-9 (E.D. La. Feb. 13, 2008); Baker v. Cain, Civ. Action No. 06-

2039, 2007 WL 2174959, at *10-11 (E.D. La. July 26, 2007); White v. Cain, Civ. Action No, 06-

1576, 2006 WL 3703240, at *4-5 (E.D. La. Dec. 11, 2006); Turcios v. Dretke, No. Civ. A. H-97-

0515, 2005 WL 3263918 (S.D. Tex. Nov. 29, 2005).[28]

        In light of the complete lack of evidentiary support for petitioner's contention that

his counsel refused to allow him to testify, it is clear that, under the doubly deferential standards

mandated by the AEDPA, there is no basis for this federal *habeas* court to find that state court's

decision "was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).

Accordingly, this claim should be denied.

---

[28]    Out of an abundance of caution, the Court further notes that if petitioner is perhaps also
alleging that his counsel was ineffective for failing to call him testify, that claim fares no better.  A
decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not
easily be condemned with the benefit of hindsight."   United States v. Garcia, 762 F.2d 1222, 1226
(5th Cir. 1985); see also United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002); Amos v. Cain,
Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); Curtis v. Cain, Civ.
Action No. 06-1676, 2008 WL 482849, at *10 (E.D. La. Feb. 13, 2008).  Further, such a matter is
inherently one of trial strategy, and federal *habeas* courts are not to lightly second-guess counsel's
decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's
conduct falls within a wide range of reasonable assistance and, under the circumstances, might be
considered sound trial strategy.  Strickland, 466 U.S. at 689.  Petitioner has not demonstrated that
there is a valid reason to vary from that general rule in this case.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Darren O'Neal Dykes be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[29]

New Orleans, Louisiana, this eighteenth day of June, 2013.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[29] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.